UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE
Nov 30  2 41 PM '01

US ___ ___

01 CV 12091 GAO

| | |
|---|---|
| THE CADILLAC/OLDSMOBILE/NISSAN CENTER, INC., d/b/a JOHN SANTILLI'S CENTER FOR AUTOMOBILES, <br> Plaintiffs <br><br> v. <br><br> GENERAL MOTORS CORPORATION, <br> Defendant | CIVIL ACTION NO. <br><br> BBO #546461 <br> BBO #552386 <br> BBO #637642 |

## COMPLAINT

1. Plaintiff, THE CADILLAC/OLDSMOBILE/NISSAN CENTER, INC., d/b/a JOHN SANTILLI'S CENTER FOR AUTOMOBILES ("Cadillac Center") is a corporation duly organized under the laws of the State of Massachusetts with its principal place of business in Brockton, Massachusetts.

2. Defendant, GENERAL MOTORS CORPORATION ("GM") is a corporation duly organized under the laws of Delaware, whose principal place of business is in the State of Michigan. GM is authorized to do business in Massachusetts and is doing business in Massachusetts. GM manufactures vehicles under the brand names Buick, Cadillac, Chevrolet, GMC, Oldsmobile and Pontiac.

3. At all times relevant to this action, Norwood Cadillac was authorized by GM to sell Cadillac vehicles from its principal place of business in Norwood, Massachusetts.



4.  Norwood Cadillac and Cadillac Center are motor vehicle dealers within the meaning of M. G. L. c. 93B, section (1)(h) (otherwise known as the "Massachusetts Motor Vehicle Act"). GM is a manufacturer of motor vehicles as defined in chapter 93B, section (1)(b) of the Massachusetts Motor Vehicle Act.

5.  GM and Cadillac Center are parties to a contract, to-wit, a Dealer Sales and Service Agreement (hereinafter referred to as the "Dealer Agreement"). A true and accurate copy of the Dealer Agreement is attached hereto as Exhibit "A." Pursuant to the Dealer Agreement, Cadillac Center is authorized to sell and service GM products, including Cadillac and Oldsmobile vehicles, and represent itself as a GM dealer. (Exhibit A, Standard Provisions Form). The Dealer Agreement obligates GM to "permit each dealer [including Cadillac Center] the opportunity to achieve a reasonable return on investment if it fulfills its obligations under its Dealer Agreement." (Exhibit A, Article 4.1).

### Jurisdiction and Venue

6.  This is an action for damages that exceed $75,000, excluding fees and costs.

7.  This Court has jurisdiction of the subject pursuant to 28 U.C.S. § 1332.

8.  GM is engaged in business in Massachusetts, and the events herein substantially occurred in Massachusetts.

9.  Venue is proper pursuant to 28 U.S.C. § 1391(a).

## Common Allegations

10. In 1998, GM assumed partial ownership of Norwood Cadillac through the creation of Massachusetts Bay Automotive, LLC d/b/a Norwood Cadillac ("Norwood Cadillac"). Prior to 1998, Joseph Laham owned Norwood Cadillac in its entirety. Following the creation of Massachusetts Bay Automotive, LLC, Joseph Laham continued to own a portion of Norwood Cadillac.

11. In January 2000, GM took sole ownership of Norwood Cadillac when it bought out Joseph Laham's interest in Norwood Cadillac.

12. Norwood Cadillac is in the "Relevant Market Area" of Cadillac Center as that term is defined in the Massachusetts Motor Vehicle Act. Norwood Cadillac sells the same "line make" as Cadillac Center as that term is defined in the Massachusetts Motor Vehicle Act.

13. Pursuant to the Dealer Agreement, GM promises to distribute vehicles to dealers "in a fair and equitable manner." (Exhibit A, Article 6). The Dealer Agreement provides that the distribution of vehicles depends upon the availability and distribution of Motor Vehicles to dealers, including component availability and available production capacity, sales potential in Dealer's Area of Primary Responsibility, varying consumer demand . . . [and other factors outside of GM's control].

14. Consistent with the Dealer Agreement, the Massachusetts Motor Vehicle Act provides that it is a violation of the Act for a manufacturer to "change . . . [the] system for the allocation and distribution of new motor vehicles to

new motor vehicles dealers which is arbitrary or unfair or to modify an existing plan so as to cause the same to be arbitrary or unfair." G.L. c. 93B,§ 4(3)(a). Likewise, the Massachusetts Motor Vehicle Act deems it a violation of the Act for a manufacturer "to refuse to deliver in reasonable quantities and within a reasonable time after receipt of dealer's order . . . [to a dealer where that motor vehicle has been] specifically publicly advertised in media broadcast or distributed in the commonwealth by such manufacturer to be available for immediate delivery . . . ." G.L. c. 93B, § 4(3)(c).

15. In 1998, following GM's assumption of part ownership of Norwood Cadillac, Norwood Cadillac received more initial Seville models than other dealers in the same market even though those other dealers sold a greater number of Sevilles the previous model year.

16. In January 2000, following GM's assumption of sole ownership of Norwood Cadillac, Norwood Cadillac received at least as many Deville models as other dealers in the same market even though those other dealers sold a greater number of Devilles the previous model year.

17. In January 2001, Norwood Cadillac received more initial Escalade model vehicles than other dealers in the same market. In this case, Norwood Cadillac had sold more Escalade models the previous model year, however, Norwood Cadillac accomplished these increased sales by way of drastically reducing prices on the Escalade below profit margins required by other dealers in the same market.

18. As recently as July 2001, Norwood Cadillac publicly offered the 2002 model Escalade for a price of $47,995, which is well below the profit margins currently required by other dealers in the same market. Moreover, GM provided no other dealer in Norwood Cadillac's market the 2002 model Escalade until recently.

19. All conditions precedent to bringing this action have occurred or have been waived by the parties.

## COUNT ONE

### Violation of G.L. Chapter 93B, § 4(3)(k)

20. Plaintiff realleges Paragraphs 1-19 as if fully set forth herein.

21. G.L. c. 93B, § 4(3)(k) provides that it is a violation of the Massachusetts Motor Vehicle Act for an automobile manufacturer to "own and operate . . . a motor vehicle dealership within the relevant market area of a motor vehicle dealer of the same line make . . . ." A manufacturer is not deemed to be in violation of section 4(3)(k) when "operating a dealership either temporarily for a reasonable period in any case not to exceed one year or in a bona fide relationship in which an independent person has made a significant investment subject to loss in the dealership and can reasonably expect to acquire full ownership of said dealership on reasonable terms and conditions ...".

22. In violation of the Massachusetts Motor Vehicle Act, GM has engaged directly or indirectly in the ownership control and operation of Norwood Cadillac.

23. Norwood Cadillac, a corporation GM owned both partially with Joseph Laham and solely during the time frame relevant to this action, has been selling new motor vehicles to retail buyers.

24. Upon information and belief, GM, whether on its own or through Norwood Cadillac, did not offer for sale the Cadillac motor vehicle franchise owned by Norwood Cadillac to any qualified person at a reasonable price until recently.

25. Upon information and belief, (i) GM was not in a bona fide relationship with Joseph Laham from 1998 to 2000; (ii) Mr. Laham did not make a substantial investment, subject to loss, in the ownership of Norwood Cadillac during that time; and (iii) Mr. Laham was never expected to acquire full ownership of the dealership under reasonable terms and conditions.

26. GM's assumption of controlling ownership and operation of Norwood Cadillac and its sales of new motor vehicles to retail buyers was unlawful in that it was in violation of G.L. c. 93B, §4(3)(k) once GM continued to own and operate that franchise beyond one year after Massachusetts Bay Automotive first began to own and operate Norwood Cadillac in 1998.

27. Cadillac Center has been damaged by GM's violation of section 4(3)(k) of the Massachusetts Motor Vehicle Act and has sustained loss of profits, including future profits and damage to the value of its assets, including goodwill and the marketability of its dealership or appointment of a successor dealer.

WHEREFORE, Cadillac Center demands judgment against GM for damages in excess of $75,000.00 exclusive of costs and attorney's fees, and such other and further relief as this Court may deem appropriate and just.

## COUNT TWO

### Violation of G.L. c.93B, § 4(1)

28. Plaintiff realleges Paragraphs 1-27 as if fully set forth herein.

29. G.L. c. 93B, § 4(1), provides that a manufacturer is in violation of the Massachusetts Motor Vehicle Act when the manufacturer engages "in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of said parties or to the public."

30. GM has acted arbitrarily, in bad faith or unconscionably by virtue of its controlling ownership and operation of Norwood Cadillac beyond the one year time period allowed by the Massachusetts Motor Vehicle Act.

31. GM has acted arbitrarily, in bad faith or unconscionably by virtue of its improper allocation and pricing of Cadillac models in favor of its dealership, Norwood Cadillac, and its continued sale of Cadillacs at below reasonable profit levels.

32. Cadillac Center has been damaged by GM's violations of section 4(1) of the Massachusetts Motor Vehicle Act and has sustained loss of profits, including future profits and damage to the value of its assets, including goodwill and the marketability of its dealership or appointment of a successor dealer.

WHEREFORE, Cadillac Center demands judgment against GM for damages in excess of $75,000.00 exclusive of costs and attorney's fees, and such other and further relief as this Court may deem appropriate and just.

## COUNT THREE

### Violation of G.L. c. 93B, § 4(3)(a), (b), and (c)

33. Plaintiff realleges Paragraphs 1-32 as if fully set forth herein.

34. During its ownership of Norwood Cadillac, GM changed and modified its plan for allocation and distribution of new motor vehicles to the dealers in the Relevant Market Area for Norwood Cadillac, including the Cadillac Center. GM's change of its plan for allocation and distribution was arbitrary or unfair in violation of G.L. c. 93B, § 4(3)(a).

35. During its ownership of Norwood Cadillac, GM failed to advise or disclose to Cadillac Center the basis upon which it changed and modified its plan for allocation and distribution of new motor vehicles to the dealers in the Relevant Market Area for Norwood Cadillac, including the Cadillac Center. GM's failure to advise or disclose its basis to Cadillac Center for changing its allocation plan for new motor vehicles violated G.L. c. 93B, §4(3)(b).

36. GM publicly advertised, through Norwood Cadillac advertisements in local newspapers, that the 2002 Escalade was available to the public when in fact it was only available through Norwood Cadillac and not through other dealers in the Relevant Market Area, including the Cadillac Center. GM's failure to make available the vehicles being publicly advertised as available

for immediate delivery by all dealers in the Relevant Market Area, violated G.L. c. 93B, § 4 (3)(c).

37. Cadillac Center has been damaged by GM's violations of section 4(3)(a), (b), and (c) of the Massachusetts Motor Vehicle Act and has sustained loss of profits, including future profits and damage to the value of its assets, including goodwill and the marketability of its dealership or appointment of a successor dealer.

WHEREFORE, Cadillac Center demands judgment against GM for damages in excess of $75,000.00 exclusive of costs and attorney's fees, and such other and further relief as this Court may deem appropriate and just.

## COUNT FOUR

### Violation of G.L., c. 93B, § 3

38. Plaintiff reasserts paragraphs 1-37 as if fully set forth herein.

39. By virtue of its improper ownership and operation of Norwood Cadillac as well as its bad faith allocation and pricing of automobiles in favor of Norwood Cadillac and other violations of the Massachusetts Motor Vehicle Act, GM has engaged in unfair methods of competition and unfair or deceptive practices in violation of G.L. c. 93B, § 3.

40. Cadillac Center has been damaged by GM's violations of G.L. c. 93B, § 3 and has sustained loss of profits, including future profits and damage to the value of its assets, including goodwill and the marketability of its dealership or appointment of a successor dealer.

WHEREFORE, Cadillac Center demands judgment against GM for damages in excess of $75,000.00 exclusive of costs and attorney's fees, and such other and further relief as this Court may deem appropriate and just.

**DEMAND FOR TRIAL BY JURY**

Plaintiff claims a trial by jury on all issues.

The Cadillac/Oldsmobile/Nissan Center, Inc. d/b/a John Santilli's Center for Automobiles

By Its Attorneys:

_____
Tracie L. Longman (BBO #546461)
Thomas S. Vangel (BBO #552386)
Michael P. Connolly (BBO #637642)
Murtha Cullina Roche Carens & DeGiacomo
99 High Street, 20th Floor
Boston, MA 02110-2320
(617) 457-4000

and

Loula M. Fuller
FL Bar # 515949
Daniel E. Myers
FL Bar # 516554
Richard N. Sox, Jr.
FL Bar # 982156
Myers & Fuller, P.A.
402 Office Plaza Drive
Tallahassee FL 32301
(850) 878-6404

Attorneys for Plaintiff

Dated: November 30, 2001